■ OLIVIA WILLIAMS, Appellant-Respondent, v CITY OF NEW YORK et al., Respondents-Appellants. [898 NYS2d 208]—

In an action to recover damages for personal injuries and wrongful death, etc., the plaintiff appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Kings County (Ambrosio, J.), entered June 16, 2008, as, upon a jury verdict finding the defendants City of New York and New York City Parks Department 25% at fault and the decedent 75% at fault in the happening of the accident, and awarding the plaintiff, inter alia, zero damages for the decedent's pain and suffering, and upon an order of the same court dated May 7, 2007, denying her motion pursuant to CPLR 4404 (a) to set aside the verdict, failed to award damages for the decedent's pain and suffering and found the defendants to be only 25% at fault in the happening of the accident, and the defendants cross-appeal, as limited by their brief, from so much of the same judgment as, upon the order dated May 7, 2007, denying their cross motion pursuant to CPLR 4404 (a) to set aside the verdict, is in favor of the plaintiff and against them in the principal sum of $7,200 for the plaintiff's pecuniary loss.

Ordered that the judgment is modified, on the law, by adding a provision thereto severing the cause of action to recover damages for the decedent's pain and suffering; as so modified, the judgment is affirmed insofar as appealed from, with costs to the plaintiff, the matter is remitted to the Supreme Court, Kings County, for a new trial on the issue of damages for the decedent's pain and suffering only, and the order dated May 7, 2007, is modified accordingly.

The plaintiff's decedent experienced an epileptic seizure while in a swimming pool operated by the defendants City of New York and the New York City Parks Department (hereinafter together the City). Although cardiopulminary resuscitation was performed by one of the City's lifeguards on duty and the decedent was taken to a hospital for treatment, he died 11 days later. The decedent was an epileptic who had suffered from seizures for about two years prior to this incident. He had been prescribed medication, but had not taken it on the day of the incident.

As the administratrix of the decedent's estate, the plaintiff commenced this action against the City, inter alia, to recover damages for the decedent's wrongful death. After trial, a jury found that the City was 25% at fault and the decedent was 75% at fault in the happening of the accident. With respect to damages, inter alia, the jury returned a verdict of zero for the decedent's pain and suffering.

On appeal, the plaintiff contends that the jury's finding that

the City was only 25% at fault for the decedent's death was contrary to the weight of the evidence. The City contends that the evidence was legally insufficient to find that it was at fault. We find that the jury's verdict regarding liability should not be disturbed.

Here, the plaintiff's decedent, an epileptic, was comparatively negligent in failing to take his prescribed anticonvulsant medication before going swimming on the day of the incident (see Derdiarian v Felix Contr. Corp., 51 NY2d 308 [1980]). However, the decedent's negligence does not bar recovery on behalf of the plaintiff (see CPLR 1411). The City had a duty to exercise ordinary care in providing adequate supervision at the pool (see Heard v City of New York, 82 NY2d 66, 71 [1993]; Curcio v City of New York, 275 NY 20 [1937]; Peterson v City of New York, 267 NY 204 [1935]; Garcia v City of New York, 205 AD2d 49, 51 [1994]). At trial, Dr. Gutstein, the plaintiff's medical expert, explained that a person suffering a seizure would have been struggling on the surface of the water for a minute or two before being submerged. Consequently, it was not against the weight of the evidence for the jury to conclude that the City was 25% at fault due to the failure of its lifeguards to notice the decedent's struggling and respond during that one-to-two minute period. Moreover, the decedent's actions in swimming without taking his anticonvulsant medication did not constitute such an unforeseeable event as to break the causal connection between his injury and the City's negligence (see Soto v New York City Tr. Auth., 6 NY3d 487 [2006]).

Since questions of negligence and apportionment of fault are generally matters for the jury, and the verdict was supported by a fair interpretation of the evidence, the jury's apportionment of fault should not be disturbed (see Seaman v Town of Babylon, 231 AD2d 704 [1996]; Alterescu v Mills, 216 AD2d 345 [1995]).

As for the jury's award of zero damages for the decedent's conscious pain and suffering, the plaintiff correctly contends that the verdict was not supported by the weight of the evidence. A jury verdict on damages may be set aside "as against the weight of the evidence only if the evidence on that issue so preponderated in favor of the plaintiff that the jury could not have reached its determination on any fair interpretation of the evidence" (Carter v New York City Health & Hosps. Corp., 47 AD3d 661, 663 [2008]; see Abdelkader v Shahine, 66 AD3d 615 [2009]; Sescila v Garine, 225 AD2d 684, 685 [1996]). A claim to recover damages for conscious pain and suffering requires proof that the injured party experienced some level of cognitive awareness following the injury (see McDougald v Garber, 73 NY2d

246, 255 [1989]; *Johnson v Jacobowitz*, 65 AD3d 610 [2009]; *Walsh v Staten Is. Obstetrics & Gynecology Assoc.*, 193 AD2d 672 [1993]). However, the factfinder is not required to sort out varying degrees of cognition (*see McDougald v Garber*, 73 NY2d 246 [1989]), and the degree of pain is only a factor to be considered in determining the amount of damages, not whether damages should be awarded at all (*see Ramos v Shah*, 293 AD2d 459 [2002]).

Dr. Gutstein testified that the decedent's hospital records for the 11-day period preceding his death indicated that the decedent was able to squeeze the nurse's hand upon request, mouth words, open his eyes spontaneously and in response to verbal and visual stimuli, and respond to tactile and painful stimuli. The decedent responded to name calling by turning his head in the direction of the voice in addition to extubating himself. These records also indicated that during this time, the decedent was cognitively aware, able to control his motor and sensory movements to some degree and had residual brain function for several days after his seizure. Based upon his review of these records, Dr. Gutstein testified that it was his opinion that the decedent experienced pain during this time.

A jury's determination not to accept expert testimony and opinion must not be arbitrary (*see Calderon v Irani*, 296 AD2d 778, 779 [2002]). It must be supported by other testimony or by the cross-examination of the expert (*id.*; *see Baker v Shepard*, 276 AD2d 873 [2000]). If the evidence presented during trial conflicts with the facts that form the basis of the expert's opinion, or the expert equivocates on cross-examination, the jury may disregard the expert's opinion (*see Fazzone v Gourlay*, 1 AD3d 678 [2003]; *Baker v Shepard*, 276 AD2d 873 [2000]). In this case, neither situation is applicable with respect to Dr. Gutstein's opinion that the decedent experienced pain while in the hospital. Furthermore, the evidence established that the decedent had the requisite level of awareness to sustain a claim for damages for pain and suffering (*see Ramos v Shah*, 293 AD2d 459 [2002]; *Walsh v Staten Is. Obstetrics & Gynecology Assoc.*, 193 AD2d 672 [1993]). Thus, an award of zero damages for the decedent's pain and suffering was contrary to the weight of the evidence and not supported by any fair interpretation of the evidence (*see Carter v New York City Health & Hosps. Corp.*, 47 AD3d at 663; *see also Sescila v Garine*, 225 AD2d at 685). Consequently, we remit the matter to the Supreme Court, Kings County, for a new trial on the issue of damages for the decedent's conscious pain and suffering. Rivera, J.P., Leventhal, Belen and Austin, JJ., concur.